## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Anthony C. Corporan, Melinda A. Corporan,**
**Melinda K. Corporan, William T. Corporan,**
**heirs at law of William L. Corporan,**
**deceased, and Melinda A. Corporan, as the**
**Executor of the Last Will and Testament of**
**William L. Corporan and as the personal**
**representative of the Estate of William L. Corporan,**

**Plaintiffs,**

**v.**                                     **Case No. 16-2303-JWL**


**Wal-Mart Stores East, LP and**
**Wal-Mart Stores, Inc.,**

**Defendants.**

**MEMORANDUM & ORDER**

Plaintiffs are relatives and heirs of Dr. William L. Corporan, who was shot and killed by Frazier Glenn Cross, Jr., a/k/a Frazier Glenn Miller ("Miller"). The shotgun utilized by Miller to kill Dr. Corporan was sold by defendants to John Mark Reidle, who transferred the gun to Miller after he purchased it. Plaintiffs filed a state court petition against defendants alleging that defendants negligently sold the shotgun to Reidle, a straw purchaser, with knowledge that Reidle was falsely representing himself as the actual buyer of the firearm. Defendants thereafter removed the case to this court on the basis of federal question jurisdiction under 28 U.S.C. §

1331.  This matter is presently before the court on plaintiffs' motion to remand the case to state court (doc. 15).  As will be explained, the motion is granted.[1]

**Background**

The following facts are taken from the complaint and accepted as true for purposes of this motion.  On April 9, 2014, Miller and Reidle entered a Wal-Mart Supercenter in Republic, Missouri.  In the presence of at least one Wal-Mart salesperson, Miller selected a Remington shotgun and initiated its purchase.  Miller then claimed that he did not have any identification with him and "offered that Reidle would complete the purchase."  Reidle, in the presence of at least one Wal-Mart employee and Miller, completed the requisite Form 4473 in which he falsely identified himself as the actual buyer of the firearm.[2]  According to plaintiffs, defendants assisted Reidle in completing Form 4473 and then sold the firearm to Reidle, who thereafter transferred it to Miller.  On April 13, 2014, Miller used the Remington shotgun to shoot and kill Dr. Corporan and his grandson in the parking lot of the Jewish Community Center in Overland Park, Kansas.

---

[1] Defendants' motion to dismiss for failure to state a claim (doc. 9) is also pending before the court.  Because the court grants the motion to remand for lack of jurisdiction, the court may not resolve the motion to dismiss.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (court must address issues of jurisdiction before reaching merits).

[2] The Bureau of Alcohol, Tobacco, Firearms, and Explosives requires that buyers complete Form 4473 accurately and truthfully before purchasing a firearm from a federal firearms licensee. *United States v. Reed*, 599 Fed. Appx. 827, 829 n.3 (10th Cir. 2014).  Among other things, Form 4473 seeks to prevent straw purchases of firearms and, toward that end, requires a prospective purchaser to certify that he is the actual buyer and that he is not acquiring the firearm on behalf of another person.  *United States v. Reese*, 745 F.3d 1075, 1078 (10th Cir. 2014).  Form 4473 also requires the dealer to certify that the dealer believes, based on the information disclosed in the form, that it is not unlawful for the dealer to transfer the firearm to the prospective purchaser. *See Shawano Gun & Loan, LLC v. Hughes*, 650 F.2d 1070, 1073 (7th Cir. 2011).

2

Plaintiffs filed a state court petition against defendants asserting that defendants' conduct in selling the firearm to Reidle constitutes negligence, negligent entrustment and negligence per se.  In support of these claims, plaintiffs allege that defendants violated a duty to comply with federal and state gun laws prohibiting the sale of firearms and ammunition to straw purchasers, including certain provisions of the federal Gun Control Act, 18 U.S.C. § 921 et seq.  Seizing on plaintiffs' reference to the Gun Control Act, defendants removed this case on the basis of federal question jurisdiction, contending that the allegation that defendants violated the Gun Control Act is sufficient to confer federal jurisdiction.

**Standards for Federal Jurisdiction**

"Federal courts are courts of limited jurisdiction."  *See Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Removal statutes are to be narrowly construed.  *See Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005).[3]  "[T]here is a presumption against removal jurisdiction," *see Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), and "all doubts are to be resolved against removal," *see Fajen v. Foundation Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).  The removing defendant bears the burden of establishing federal jurisdiction.  *See Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013).

Under Section 1331, federal district courts have jurisdiction over civil actions "arising under" federal law.  *See* 28 U.S.C. § 1331.  "Most directly, a case arises under federal law when

---

[3] With respect to questions of federal law, this transferee court applies the law of the circuit in which it sits. See In re Urethane Antitrust Litig., 2013 WL 65988, at *1 (D.Kan. Jan. 4, 2013) (Lungstrum, J.).

3

federal law creates the cause of action asserted." *See Gunn*, 133 S. Ct. at 1064. In this case, plaintiffs have asserted only state law negligence claims, and thus have not asserted any causes of action created by federal law. The "creation" test for federal question jurisdiction "admits of only extremely rare exceptions," and the Supreme Court has set forth an additional test for determining the category of cases—described by that Court as a "special and small category" and a "slim category"—in which federal "arising under" jurisdiction over state-law-created claims still lies. *See id.* at 1064–65.

The Supreme Court stated the test in *Gunn* as follows: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution without disrupting the federal-state balance approved by Congress." *See id.* at 1065 (citing *Grable & Sons Metal Prods ., Inc. v. Darue Eng'g and Mfg.*, 545 U.S. 308, 313–14 (2005)). Although this inquiry "rarely results in a finding of federal jurisdiction," jurisdiction is proper when all four of these requirements are met. *Evergreen Square v. Wisconsin Housing & Econ. Dev. Auth.*, 776 F.3d 463, 466 (7th Cir. 2015). The Tenth Circuit has elaborated on the *Gunn* test by identifying the following principles that mark the "narrow boundaries" of this basis for federal jurisdiction:

> [T]he recognition of substantial question jurisdiction does not disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. Nor can federal question jurisdiction depend solely on a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. Finally, if a claim does not present a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous cases, but rather is fact-bound and situation-specific, then federal question jurisdiction will generally be inappropriate.

*See Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947-48 (10th Cir. 2014) (internal quotations and citations omitted).  Moreover, as the *Becker* court noted, *see id.*, this inquiry by the court is constricted by the well-pleaded complaint rule.  "When determining whether a claim arises under federal law, we examine the well pleaded allegations of the complaint and ignore potential defenses."  *See Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (internal quotations omitted) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)).

    In asserting federal jurisdiction under the *Gunn* test, defendants argue that plaintiffs' petition necessarily raises a federal issue because plaintiffs' negligence per se claim requires plaintiff to prove that defendants violated the federal Gun Control Act, as specifically alleged by plaintiffs in their petition.  The court disagrees. To begin, plaintiffs allege in support of their negligence per se claim that defendants violated "various federal and *state laws*" governing the sale and marketing of firearms.  While plaintiffs have not yet identified any specific state laws, the petition on its face does not "necessarily" raise a federal issue. *Daniel v. Armslist, LLC*, 2016 WL 660894, at *3 (E.D. Wis. Feb. 17, 2016); *Abdale v. North Shore-Long Island Jewish Health System, Inc*., 2014 WL 2945741, at *4 (E.D.N.Y. June 30, 2014) (a complaint that alleges negligence per se based on violations of state and federal law does not create a "necessary" federal-law question because the negligence per se claim relies on alternative grounds for finding the presumption of negligence—i.e., violations of state or federal law); *DeLuca v. Tonawanda Coke Corp*., 2011 WL 3799985, at *5 (W.D.N.Y. Aug. 26, 2011) (no "necessary" federal law question where plaintiff alleged negligence per se based on defendants violation of "State and Federal law").

Moreover, when a claim is supported by alternative and independent theories, one of which does not implicate federal law, the claim does not "arise under" federal law. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809–10 (1988).   In this case, plaintiffs' negligence per se "claim" is more accurately described as an alternative theory of negligence premised—like each theory in the petition—on defendants' transfer of the firearm to a straw purchaser.   While plaintiffs have separated this negligence action into separate counts for purposes of their petition, the case is a state law negligence action based on the sale of the firearm to Reidle.   Thus, even if plaintiffs' theory of negligence per se relies exclusively on a violation of the federal Gun Control Act, no federal subject matter jurisdiction exists because plaintiffs' reliance on the federal statute for negligence per se is not essential to the other theories of negligence set forth in the petition.   In other words, proof that defendants violated the Gun Control Act is not necessary for plaintiffs to prevail on their negligence claim.   Rather, a violation of the Gun Control Act is just one way plaintiffs intend to establish their state law claim that defendants were negligent and even if plaintiffs do not establish a violation of the Gun Control Act, they might still be entitled to recover under an alternative theory of negligence. *See Mulcahey v. Columbia Organic Chem. Co*., 29 F.3d 148, 154 (4th Cir. 1994) (finding that federal question jurisdiction did not exist where plaintiffs relied on CERCLA violations in state law negligence per se claim but negligence per se was only one of the plaintiffs' theories of recovery); *Daniel*, 2016 WL 660894, at *3 (where plaintiff relied on violations of Gun Control Act in support of negligence  claim, no federal jurisdiction existed because that theory was only one among several negligence theories); *Abbott v. Tonawanda Coke Corp*., 2012 WL 42414, at

*4 (W.D.N.Y. Jan. 9, 2012) (plaintiffs' alternative theory of negligence per se based on violations of federal law is not essential to their negligence theory).

Finally, even if defendants' alleged violation of the Gun Control Act were deemed a necessary element to plaintiffs' claim in this case, the court would still not find federal question jurisdiction in this case because the federal issue is not sufficiently substantial.  In *Gunn*, the Supreme Court described the requirement of a substantial issue as follows:

> [I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim "necessarily raise[s]" a disputed issue. . . .  The substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole.

See Gunn, 133 S. Ct. 1059; *see Goade v. Medtronic, Inc*., 2013 WL 6237853, at *6 (W.D. Mo. Dec. 3, 2013) ("[T]his degree of importance has been found only when the Government's operations are affected by the federal issue.").  In *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), the Court held that a plaintiff's allegations that a drug was misbranded in violation of federal law, and that the violation both created a rebuttable presumption of negligence and directly caused the injuries at issue, failed to create federal question jurisdiction.  *See id*. at 805–07.  The Court concluded that such allegations established only "the presence of a federal issue in a state-created cause of action" that was "insufficiently 'substantial' to confer federal-question jurisdiction."  *Id*. at 810, 814.  The Court specifically held that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'"  *Id*. at 817 (quoting 28 U.S.C. § 1331). In *Grable,* the Court upheld the

7

continuing validity of *Merrell Dow*, explaining that the exercise of federal jurisdiction over state-law tort claims based on violations of federal standards, in the absence of a federal right of action, would be enormously disruptive of the proper division of labor as between federal and state courts:

> One only needed to consider the treatment of federal violations generally in garden variety state tort law.  The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings.  A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts.  Expressing concern over the "increased volume of federal litigation," and noting the importance of adhering to "legislative intent," *Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law "solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] . . . under state law."  . . . .  *Merrell Dow*'s analysis thus fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts.

545 U.S. at 318–19 (citations omitted).  The Court explained that "exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues.  For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action.  And that would have meant a tremendous number of cases."  *Id.* at 318.

This state-law negligence action in which a violation of a federal statute is asserted merely as an element of a negligence per se theory is "unmistakably of the kind that, absent federal subject matter jurisdiction in diversity, belongs in state court so as not to 'materially affect, or threaten to affect, the normal currents of litigation.'" *Fuller v. BNSF Ry. Co.,* 472 F.

8

Supp. 2d 1088, 1095 (S.D. Ill. 2007) (quoting *Grable*, 545 U.S. at 319).  As explained by both *Merrell Dow* and *Grable,* a plaintiff's use of federal law as the source of a duty under state law is simply insufficient to create federal question jurisdiction.  *See id.* (citing cases supporting the principle that there is no substantial federal interest in a negligence claim where federal laws are cited only to assist in establishing a standard by which to measure the negligence).

The Gun Control Act referenced by plaintiffs in their petition does not create a private, federal cause of action and the petition reveals a fact-bound, private dispute between parties with no direct interest by the United States.  In such circumstances, the exercise of federal question jurisdiction is not appropriate.  *See Becker*, 770 F.3d at 947–48 ("if a claim does not present a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous cases, but rather is fact-bound and situation-specific, then federal question jurisdiction will generally be inappropriate").[4]

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion to remand (doc. 15) is granted.

**IT IS FURTHER ORDERED THAT** this case is remanded to the District Court of Johnson County, Kansas.

---

[4] Defendants' citation to *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532, 1538 (S.D. Ga. 1995) does not persuade the court otherwise.  In that case, the issue of federal question jurisdiction was apparently never disputed by the parties and the district court, resolving a motion for summary judgment on the negligence per se claim, simply stated that interpretation of the Gun Control Act was a federal question such that the court did not need to defer to state appellate decisions.

**IT IS SO ORDERED**.


Dated this 12th day of July, 2016, at Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge